[Cite as *State v. Mitchell*, 2019-Ohio-2103.]

STATE OF OHIO )  
                        )ss:  
COUNTY OF SUMMIT )

IN THE COURT OF APPEALS  
NINTH JUDICIAL DISTRICT

STATE OF OHIO

    Appellee

v.

DANIELLE MITCHELL

    Appellant

C.A. No.     29223

APPEAL FROM JUDGMENT  
ENTERED IN THE  
COURT OF COMMON PLEAS  
COUNTY OF SUMMIT, OHIO  
CASE No.    CR-2018-03-1046-A

DECISION AND JOURNAL ENTRY

Dated: May 29, 2019

HENSAL, Judge.

{¶1}    Danielle Mitchell appeals her robbery conviction from the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    The victim in this case previously dated Ms. Mitchell. A few years after their relationship ended, the victim hired Ms. Mitchell, her sister, and another woman to work with him at a restaurant he ran out of a local bar. The restaurant was cash only, and the victim paid his three employees in cash.

{¶3}    Ms. Mitchell eventually quit the restaurant without giving prior notice. At the time she quit, the victim was staying at Ms. Mitchell's sister's apartment, though he denied being in a relationship with her. Shortly thereafter, the victim collected his belongings from Ms. Mitchell's sister's apartment, including his clothes and a bag of cash that contained money from the restaurant, some of which the victim owed to his employees. The victim explained that he

packed his belongings because he knew Ms. Mitchell had a key to her sister's apartment, and he no longer felt comfortable staying there. Both Ms. Mitchell and her sister were present while the victim packed his belongings, and the victim noticed that Ms. Mitchell was using her cell phone.

{¶4} The victim's testimony and surveillance footage established that the following events took place. The victim packed his belongings into a suitcase and put the suitcase into the trunk of his car, which was parked next to Ms. Michell's car in the apartment complex's parking lot. Then, another car pulled into the parking lot and three men emerged. The three men approached the victim and immediately became aggressive. The victim prepared to fight the men but, being outnumbered, decided to run from them. Two of the men pursued him while the third man opened the trunk of the victim's car and removed the suitcase, as well as another bag. The two men eventually caught up to the victim and hit him. Meanwhile, Ms. Mitchell arrived at the parking lot and was standing next to her car. The third man – with the victim's belongings in hand – motioned toward Ms. Mitchell, and the trunk of her car popped open. The third man then put the victim's belongings into her trunk, and she immediately drove off. The three men then returned to their vehicle and left the scene. The victim watched as the men drove away, and then flagged down a police officer.

{¶5} The police arrested and interviewed Ms. Mitchell. During the interview, Ms. Mitchell allowed the officer to look through her cell phone, which contained text messages from the day of the events in question. This included text messages from Ms. Mitchell to her boyfriend's brother's phone, containing the address (which was off by one digit) of her sister's apartment, and a message saying "he here" within minutes prior to the three men pulling into the parking lot and confronting the victim. Police later identified one of the three men as Ms. Mitchell's boyfriend.

**{¶6}** A grand jury indicted Ms. Mitchell on one count of robbery in violation of Revised Code Section 2911.02(A)(2). Ms. Mitchell pleaded not guilty, and the matter proceeded to a jury trial. At trial, the State proceeded under the theory of complicity to commit robbery, and the jury returned a verdict of guilty. Ms. Mitchell now appeals, raising three assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

DANIELLE'S CONVICTION[ WAS] NOT BASED UPON SUFFICIENT
EVIDENCE AS A MATTER OF LAW[.]

**{¶7}** In her first assignment of error, Ms. Mitchell argues that her conviction for robbery was based upon insufficient evidence. This Court disagrees.

**{¶8}** A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "[T]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct de novo review, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

**{¶9}** Ms. Mitchell challenges the sufficiency of the evidence based upon the State's alleged failure to establish that she knowingly committed robbery. She asserts that she was simply using her cell phone and sitting in her car while the robbery occurred. Somewhat paradoxically, she also asserts that she did not commit a theft because she "merely took back her wages" that the victim owed her.

{¶10} Section 2911.02(A)(2), under which Ms. Mitchell was charged, provides that "[n]o person, in attempting or committing a theft offense * * * shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]" A theft offense occurs when someone knowingly obtains or exerts control over the property of another without the owner's consent, with the purpose to deprive the owner of that property. R.C. 2913.02(A)(1). Section 2923.03 governs complicity, providing that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" R.C. 2923.03(A)(2). As the Ohio Supreme Court has stated:

> [t]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.

*State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "Such criminal intent can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed." *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, ¶ 13.

{¶11} The evidence presented at trial, if believed, indicates that two men chased the victim – eventually catching up to him and hitting him – while another man took the victim's belongings from the trunk of the victim's car. This included a bag of cash – some of which the victim admittedly owed to Ms. Mitchell – and other personal items. After the man holding the victim's belongings motioned toward Ms. Mitchell, the trunk of her car popped open, and he put the victim's belongings into her trunk. Ms. Mitchell then got into her car and drove off. Viewing this evidence in a light most favorable to the State, we cannot say that the State presented insufficient evidence to support Ms. Mitchell's conviction for complicity to commit robbery. Ms. Mitchell's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

DANIELLE'S CONVICTION[ WAS] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶12}  In her second assignment of error, Ms. Mitchell asserts that her conviction was against the manifest weight of the evidence.  If a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78 Ohio St.3d 380, at 387.  An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶13}  Ms. Mitchell argues that the jury clearly lost its way due to the "overwhelming romantic entanglement of the parties" created by the fact that the victim previously dated her, was living with her sister, and owed both of the women money for their work at the restaurant. She, therefore, asserts that she had "other possible motives[.]"

{¶14}  We fail to see how Ms. Mitchell's "other possible motives" render her conviction for complicity to commit robbery against the manifest weight of the evidence.  Nor has Ms. Mitchell properly developed an argument in support of this position. *See* App.R. 16(A)(7).  To the extent that her argument is an attempt to challenge the victim's credibility, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  This is because "[t]he trier

of fact is in the best position to judge the credibility of the witnesses[.]" *State v. Curry*, 9th Dist. Summit No. 23104, 2007-Ohio-238, ¶ 19. The jury, therefore, "is free to believe all, part, or none of the testimony of each witness[,]" and this Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35; *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13. Accordingly, Ms. Mitchell's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY ADMITTING STATE'S EXHIBIT 3 INTO EVIDENCE AGAINST DANIELLE[.]

{¶15} In her third assignment of error, Ms. Mitchell argues that the trial court erred by admitting a screenshot of her text messages to her boyfriend's brother's phone into evidence. The crux of her argument is that the messages were not put into context and, therefore, were admitted in contravention of Evidence Rules 106 and 403. This Court will not "disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 66.

{¶16} Evidence Rule 106 provides that:

[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it.

Thus, this Rule "allows the adverse party to immediately put the admitted statements into context by permitting h[er] to simultaneously admit the remainder of the writing or recording." *State v. Byrd*, 9th Dist. Lorain No. 03CA008230, 2003-Ohio-7168, ¶ 26.

**{¶17}** Regarding Rule 403, Ms. Mitchell relied upon subsection (A) in her pre-trial motion in limine, and at trial. Yet her merit brief on appeal cites subsection (B). The substance of her argument, however, relates to subsection (A), and we will address her argument accordingly. Evidence Rule 403(A) provides that:

> [a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

**{¶18}** Relying on these evidentiary rules, Ms. Mitchell argues that the admitted text messages were taken out of context, that they were inculpatory, and that they were "substantially prejudicial[.]" She asserts that, taken in context, they could have been exculpatory.

**{¶19}** There is no dispute that Ms. Mitchell consented to the search of her cell phone after she received her *Miranda* rights. At trial, Ms. Mitchell's counsel objected to the text messages being admitted into evidence, but made no attempt to offer evidence that would have put those text messages into some other context. *See* Evid.R. 106. Ms. Mitchell's argument on appeal requires this Court to assume that other evidence existed that would have undermined the inculpatory nature of those text messages, and to hold that the trial court erred by admitting them simply because they were prejudicial to her. As the State points out, all evidence can be prejudicial to the opposing party. *State v. Kilbarger*, 5th Dist. Fairfield No. 13-CA-64, 2014-Ohio-4949, ¶ 39. To be excluded under Evidence Rule 403(A), however, the evidence must be "unfair[ly] prejudic[ial]," which Ms. Mitchell has failed to establish. We, therefore, conclude that the trial court did not abuse its discretion when it admitted the text messages Ms. Mitchell sent to her boyfriend's brother's phone into evidence. Ms. Mitchell's third assignment of error is overruled.

III.

**{¶20}** Ms. Mitchell's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE CORGAN, Assistant Prosecuting Attorney, for Appellee.